## DIEBOLD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10473.

United States Court of Appeals Third Circuit.

Argued Nov. 20, 1951.

Decided Feb. 1, 1952.

J. Henry O'Neill, Pittsburgh, Pa. (John G. Kish, G. Harold Blaxter, and Blaxter, O'Neill & Houston, all of Pittsburgh, Pa., on the brief), for petitioner.

S. Dee Hanson, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Washington, D. C., on the brief), for respondent.

Before GOODRICH, McLAUGHLIN, and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The Tax Court has sustained the Commissioner of Internal Revenue and disagreed with the taxpayer, A. J. Diebold, on the proper calculation of taxable net gain for income tax purposes on taxpayer's 1945 sale of shares of capital stock of Diebold Investment Company. To determine net gain on this transaction the taxpayer deducted from the sale price not only the original cost of the stock to him but also 1/7 of the total value of a bequest and devise made to Diebold Investment Company in 1927 by taxpayer's brother F. X. Diebold. The Tax Court ruled that this was improper, reasoning that the bequest and devise to the corporation did not increase taxpayer's basis for his stock in that corporation. The present petition for review contests that ruling.

In greater detail the facts are these. Diebold Investment Company is a Pennsylvania business corporation organized in 1915. It is a family enterprise. At organization 96 shares of capital stock were issued; 12 to M. Diebold and 12 to each of his seven sons of whom taxpayer was one and F. X. Diebold another. Thereafter, M. Diebold died having disposed of his 12 shares by gift and bequest to his daughter.

The stockholders were also the directors of the corporation. Pursuant to their unanimous agreement, all of the stock was deposited with the treasurer of the corporation and made subject to release only upon the consent of five directors.

This situation of corporate ownership and control by the seven brothers and their sister equally and exclusively continued

until F. X. Diebold died unmarried in 1927. He bequeathed and devised his residuary estate to Diebold Investment Company. This residue included his 12 shares of stock of Diebold Investment Company and, in addition, certain real property, miscellaneous stocks and bonds of other corporations, and other personalty.

Thereafter, the ownership and control of the corporation continued in the six surviving brothers and their sister. The corporation paid stock dividends in 1930 and 1937 which increased the holdings of each stockholder to 200 shares. In 1945, the taxpayer sold 150 of his 200 shares of stock. It is the gain on that transaction which is now in controversy.

Section 111 of the Internal Revenue Code provides that gain on the sale of property "shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain". 26 U.S.Code, 1946 ed., Section 111. For present purposes, the adjusted basis for determining gain is defined in Section 113(b) by reference back to Section 113 (a) (5) as "the cost of such property; except that * * * (5) if the property was acquired by bequest, devise, or inheritance, * * * the basis shall be the fair market value of such property at the time of such acquisition." 26 U.S.Code, 1946 ed., Section 113.

## I

The parties agree that the 1930 and 1937 stock dividends do not affect the legal analysis of the matter in dispute. Therefore, for simplicity, we will ignore them, considering only the 96 shares which constituted all of the capital stock originally issued by the corporation. We shall further simplify our analysis by speaking as if taxpayer had sold all of his stock in 1945 rather than $\frac{3}{4}$ of it. In terms of this simplified picture, it is the position of the Tax Court and the Commissioner that the property sold was 12 shares of Diebold Investment Company stock. The taxpayer purchased these shares before his brother's death and thereafter continued to own only these shares until he sold them. Therefore, the Tax Court reasons, none of the prop-

erty sold was acquired by bequest and no adjustment of the taxpayer's basis beyond original cost is warranted. In this analysis the devise of F. X. Diebold to the corporation is no more significant than any other transaction which in the course of the affairs of the corporation may have increased its assets and thus increased the value of outstanding stock.

We think, however, that when valid and familiar conceptions of the nature and ownership of corporate stock are employed in relating the facts of this case to the quoted provisions of the Internal Revenue Code a picture more favorable to the taxpayer emerges.

In some circumstances, analysis of that form of property which we call corporate stock need not proceed beyond the certificate itself and the number of shares it represents. In other situations it is neither realistic nor proper to stop there. For beyond its status as paper of monetary value, the share of stock represents rights of corporate ownership and control. Indeed, where corporate structure is not complicated by various classes of stock and shares are not sold freely as commodities, issued capital stock is significant primarily as the embodiment of proportional interests of ownership and control of the corporate enterprise by those to whom the stock belongs.

We have such a case here. Each of eight members of a family enjoyed, as an owner, a one-eighth interest in the corporate enterprise. This was the essential meaning of each unit of 12 shares viewed as property. In this situation the bequest which effected the surrender and elimination of F. X. Diebold's $\frac{1}{8}$ interest resulted immediately in an increase of the proprietary rights of each surviving stockholder to a 1/7 interest in the corporate enterprise. It is true that each survivor still had 12 shares of stock. But it is equally true and more significant that his proportional proprietary interest increased from 7/56 to 8/56. And if this gain in ownership rights to each survivor was the purpose of the devise it is realistic and proper to say that each survivor who originally purchased a 7/56 interest in the corporation acquired as an immediate and

necessary legal result of the bequest an additional 1/56 interest.

We recognize that in applying the provisions of the Internal Revenue Code relevant to the determination of a taxpayer's basis for property, distinction must be made between an acquisition of some part of the property and an increase in the value of property already held. But we also think that the foregoing analysis which makes a 1/56 proprietary interest in the corporation new property of the taxpayer rather than an increase in the value of the old is legally sound and merits judicial approval.

But this does not quite solve the problem. It is arguable that this increase of the property of the taxpayer must be disregarded because the effective transaction occurred between F. X. Diebold, upon his death, and the corporation. We must decide, therefore, whether Section 113(a) (5) of the Internal Revenue Code requires that the concept of "property was acquired by bequest" be limited to cases in which the recipient is technically a legatee.

Here a gift tax analogy is particularly helpful. Where a single gift has been made to a trust, the transaction has been treated as several gifts to the beneficiaries of the trust for the purpose of permitting the donor more than one statutory $5,000 exemption from taxation. Helvering v. Hutchings, 1941, 312 U.S. 393, 61 S.Ct. 653, 654, 85 L.Ed. 909. Yet the statute in that case, in terms, exempted the first $5,000 given "to any person" and a trust was expressly declared to be a person for the purposes of the statute. Sections 504(b) and 1111 of the Revenue Act of 1932, 47 Stat. 169, 247, 289. If under such a statute a gift to a trust may be treated for tax purposes as several gifts to the intended beneficiaries, a bequest of stock of a family corporation, in terms to the corporation itself, may likewise be given effect as a bequest enlarging the proportional holding of the surviving stockholders. See Scanlon v. Commissioner, 1940, 42 B.T.A. 997, 999; Estate of William L. Belknap, 1951, C.C.H. Tax Ct.Rep.Current Mem.Dec. 769, 777. Indeed this is an *a fortiori* case, since here, unlike the trust case, the beneficiaries acquire legal rather than equitable interests of ownership as an immediate result of the transaction between other parties. Section 113(a) (5) does not say that he who acquires property by bequest must be named as beneficiary in the testament. It may well not have been contemplated that A could acquire property by a bequest in terms solely to B. Yet, in the extraordinary case where the interplay of property conceptions is such that a bequest to B does operate to vest additional property in A, the language of the statute comprehends the transaction.

It is also urged by the Commissioner that the taxpayer has failed to prove that F. X. Diebold's bequest was intended primarily to benefit his brothers and sister. But in the absence of evidence to the contrary, we think such intention must be inferred from the facts before us. The corporation itself was a legal structure for the conduct of a family business. Family ownership and control were closely guarded. The stockholders who survived F. X. Diebold were his nearest relatives and the natural objects of his bounty. We experience no difficulty, therefore, in concluding that he must have intended his benefaction for them.

It follows that the taxpayer's adjusted basis should have included both the cost to him of his original 7/56 interest in the corporation and the value at the time of acquisition of the additional 1/56 interest which the taxpayer acquired through the bequest of decedent's stock to the corporation. This value is the worth of the stock as it passed from the testator and does not include any part of the value of the property other than stock which he devised and bequeathed to the corporation. Cf. Brewster v. Gage, 1930, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457.

Convinced that the foregoing analysis is technically sound, we find it particularly satisfactory because it forwards a fundamental policy of the income tax laws to exempt from income taxation the value of non compensatory acquisitions including "all acquisitions in the devolution of a dece-

dent's estate." See Lyeth v. Hoey, 1938, 305 U.S. 188, 59 S.Ct. 155, 159, 83 L.Ed. 119.

## II

■■ Different analysis is required by the devise and bequest to the corporation—albeit for the benefit of surviving stockholders—of property other than stock of Diebold Investment Company. This is because the only property sold by the taxpayer and thus the only property to be accorded a basis for the calculation of gain is Diebold Investment Company stock. We have already indicated that it is the enlargement of the proportional interest of ownership represented by that stock and not the enhancement of its value which permits adjustment of the basis on subsequent sale. The devise of miscellaneous property, unlike the surrender of Diebold stock, did not enlarge the taxpayer's proportional interest in the corporation. To put the matter somewhat differently, although the taxpayer sold an enlarged fractional interest in the corporation, he did not sell any part of the real estate and other miscellaneous property devised by his brother. For this reason, there is no warrant for the inclusion of the value of that real property and miscellaneous personalty in the basis of taxpayer's stock. Any other conclusion would require that we ignore the corporate entity of Diebold Investment Company and identify the shareholder with the corporation. Neither reason nor authority permits this. Cf. National Carbide Corp. v. Commissioner of Internal Revenue, 1949, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779; Moline Properties, Inc., v. Commissioner of Internal Revenue, 1943, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499. No part of F. X. Diebold's residuary bequest and devise other than his Diebold Investment Company stock affected the basis of taxpayer's Diebold Investment Company stock.

Thus, we conclude that neither the decision of the Tax Court nor the opposing claim of the taxpayer is correct. The decision of the Tax Court will be vacated and the case remanded for redetermination of the taxpayer's deficiency in accordance with this opinion.