ESTATE OF JULIE B. HITCHON, DECEASED, MILTON L. JACOBSON, EXECUTOR, AND HERBERT M. HITCHON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF WALTER G. HITCHON, THE UNION AND NEW HAVEN TRUST COMPANY, CONSERVATOR, AND LUCILE B. HITCHON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 119–64, 132–64. Filed October 21, 1965.

*James J. Dutton* and *Milton L. Jacobson,* for the petitioners in docket No. 119–64.

*John H. Weir,* for the petitioners in docket No. 132–64.

*Lawrence A. Wright,* for the respondent.

OPINION

ATKINS, *Judge:* The respondent determined a deficiency of $10,002.-91 in income taxes against Herbert M. Hitchon and the Estate of Julie B. Hitchon for the taxable year 1960, and a deficiency of $9,470.93 for the same year against Lucile B. Hitchon and the Estate of Walter G. Hitchon. The issue for decision is whether the transfer without consideration to a family corporation by one member of a family of his shares of stock in such corporation constituted a gift to the other members of the family who were stockholders, thereby increasing the basis of their stock in the family corporation by the amount of the basis of the stock in the hands of the transferor, for the purpose of computing gain upon the surrender of such stock in liquidation of the corporation.

All of the facts were stipulated and the stipulations are incorporated herein by this reference.

During the taxable year 1960, Herbert M. and Julie B. Hitchon were husband and wife residing in Norwich, Conn. Their 1960 joint Federal income tax return was filed with the district director of internal revenue, Hartford, Conn. Julie B. Hitchon died in September 1961.

Walter G. and Lucile B. Hitchon are husband and wife residing in Mystic, Conn. In 1953 the Probate Court for the district of Norwich,

Conn., adjudged Walter G. Hitchon incapable of handling his affairs. Thereafter Lucile B. Hitchon acted as conservatrix of the person and estate of her husband until 1962 when the Union & New Haven Trust Co., New Haven, Conn., was appointed conservator of the estate. Lucile B. Hitchon, individually and as conservatrix, filed a joint Federal income tax return for the taxable year 1960 with the district director of internal revenue, Hartford, Conn.

Glen Woolen Mills, Inc. (hereinafter referred to as the corporation), was incorporated in 1928 under the laws of the State of Connecticut as successor to the business of a sole proprietorship which had been conducted by Walter G. Hitchon, Sr., since 1896. Its authorized capital stock consisted of 2,000 shares of stock of one class, each share having a par value of $100, and upon the payment by Walter G. Hitchon of $1,000, 10 shares were issued to him and his three sons as follows:

| | Certificate No. | Number of shares |
|---|---|---|
| Walter G. Hitchon, Sr. | 1 | 7 |
| Herbert M. Hitchon | 2 | 1 |
| Howard F. Hitchon | 3 | 1 |
| Walter G. Hitchon | 4 | 1 |

Thereafter, in 1929, Walter G. Hitchon, Sr., paid into the corporation cash and property in the total amount of $150,200 and received 1,502 additional shares of stock in consideration therefor, represented by certificates dated January 1, 1929, as follows:

| Certificate No. | Number of shares |
|---|---|
| 5 | 251 |
| 6 | 251 |
| 7 | 251 |
| 8 | 252 |
| 9 | 252 |
| 10 | 245 |
| Total | 1,502 |

A special notice of annual meeting of the stockholders of the corporation to be held on December 14, 1934, provided as follows:

The stockholders of the Glen Woolen Mills Inc. are hereby warned of Annual Meeting to be held at office of above company, December 14, 1934, at 3:00 o'clock P.M. to act on regular business, and to consider offer of Walter G. Hitchon, Sr. donating 1508 shares of Capital Stock, owned by him in his name, to the Treasury to be held as Treasury stock.

The minutes of the meeting held on December 14, 1934, provided in pertinent part as follows:

The following proposition was made by Walter G. Hitchon Sr.

I hereby propose to donate to your Company 1508 shares of Capital Stock thereof, full paid and non-assessable, now held by me, to be owned by your Corporation.

A resolution approving of the acquisition by said Corporation of the above 1508 shares of its own stock by donation was adopted by a vote of three-fourths of the entire outstanding Capital Stock.

Resolved—that the Directors be and they hereby are, authorized to acquire such stock and arrange transfer at a later Directors' meeting.

Resolved—that the Directors be authorized to sell or otherwise dispose of such stock when acquired at such time or times and in such manner as to them may seem advisable.

The corporation's balance sheet as of December 31, 1934, reflected the following:

| | | |
|---|---:|---:|
| Total assets | | $156,180.44 |
| Liabilities | | 44,142.23 |
| Capital: | | |
| Capital stock | $151,200.00 | |
| Valuation surplus | 12,800.00 | |
| Earned deficit | (51,961.79) | 112,038.21 |
| Total liabilities and capital | | 156,180.44 |

The minutes of a special meeting of the directors of the corporation held on May 1, 1935, provided in pertinent part as follows:

Special meeting was called to arrange details, and cause Secretary to transfer 1508 shares of stock donated by Walter G. Hitchon. Said stock to be held as Treasury stock.

On May 9, 1935, stock certificate Nos. 1, 5, 6, 7, 8, 9, and 10 were canceled, and stock certificate No. 12 for one share was issued to Walter G. Hitchon, Sr. On the same day stock certificate No. 11 was issued in the name of the corporation for 1,508 shares of its own capital stock. At the time of the transfer the sons, Herbert M. Hitchon, Walter G. Hitchon, and Howard F. Hitchon, were 46, 32, and 29 years of age, respectively.

As a result of the donation of the stock to the corporation by Walter G. Hitchon, Sr., in May 1935, the number of outstanding shares was reduced to four, and each of the four shareholders, owning one share thereof, effectively held a one-quarter interest in the control of the corporation.

During 1934 and 1935 the three sons were officers and directors of the corporation, and were paid the following salaries:

| | 1934 | 1935 |
|---|---:|---:|
| Herbert M. Hitchon | $3,820 | $6,915.65 |
| Walter G. Hitchon, Jr | 3,260 | 6,526.39 |
| Howard F. Hitchon | 3,107 | None |

The corporation's balance sheet as of December 31, 1935, reflected the following:

| | | |
|---|---:|---:|
| Total assets | | $169,457.98 |
| Total liabilities | | 45,915.66 |
| Capital: | | |
| Capital stock | $400.00 | |
| Valuation surplus | 12,800.00 | |
| Donated surplus | 150,800.00 | |
| Earned deficit | (40,457.68) | 123,542.32 |
| Total liabilities and capital | | 169,457.98 |

One of the sons, Howard F. Hitchon, died in 1938, and his wife succeeded to his interest in the corporation.

In 1946 the stock of the corporation was split 120 for 1. The corporation was liquidated as of July 31, 1960. Herbert M. Hitchon and Walter G. Hitchon (or the latter's conservatorship estate) each received as a liquidating distribution the sum of $61,950.38. Each reported in his 1960 return taxable gain upon the liquidation in the amount of $12,075.19, computed as follows:

| | |
|---|---:|
| Liquidating distribution | $61,950.38 |
| Basis of stock | 37,800.00 |
| Long-term capital gain | $24,150.38 |
| Capital gains deduction (percent) | 50 |
| Taxable gain | $12,075.19 |

In each notice of deficiency the respondent determined that the long-term capital gain realized was $61,850.38, and accordingly increased the taxable gain reported by $18,850. In making such determination the respondent used a basis of $100, rather than the claimed basis of $37,800.

Section 1012 of the Internal Revenue Code of 1954 provides that the basis of property shall be its cost, except as otherwise provided. Section 1015 of the Code [1] provides that, for the purpose of computing gain, the basis of property acquired by gift shall be the same as it would be in the hands of the donor.

The petitioners contend that the transfer to the corporation by Walter G. Hitchon, Sr., in 1935 of 1,508 of his 1,509 shares of stock of the corporation, leaving him and his three sons each owning 1 share of the stock of the corporation, constituted a gift by the father to each of the three sons of a portion of his interest in the corporation,

---

[1] Sec. 1015 provides in part as follows:

(a) GIFTS AFTER DECEMBER 31, 1920.—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis (adjusted for the period before the date of the gift as provided in section 1016) is greater than the fair market value of the property at the time of the gift, then for the purpose of determining loss the basis shall be such fair market value. * * *

that under the statute the donees took the basis of the donor, and that, therefore, the basis of the stock interest of each son was increased to $37,800.

The respondent, on the other hand, contends that the transfer by the father of the stock to the corporation did not constitute a gift to the sons, but rather a capital contribution by him to the corporation, that the basis of his retained one share of stock would be increased by the cost of the shares contributed to the corporation, and that the transaction did not change the basis of each son's stock interest from the original $100 basis.

After Walter G. Hitchon, Sr., paid into the corporation in 1929 cash and property in the additional amount of $150,200 and received in consideration therefor 1,502 additional shares, he owned 1,509 of the total of 1,512 shares outstanding. Thus, each of the sons owned an interest of only 1/1512 in the corporation, whereas Walter G. Hitchon, Sr., owned an interest of 1509/1512.

As a result of the transfer by Walter C. Hitchon, Sr., of the 1,508 shares to the corporation he and each of his sons thereafter owned a 25-percent interest in the corporation. On brief the respondent states that he does not dispute this, but it is his position that the record presented does not support any inference of an intent on the part of the father to make a gift to his three sons, which would be necessary to bring into operation the basis provisions of section 1015 of the Code. Rather, he argues that the intent of Walter G. Hitchon, Sr., in making the transfer was to improve the corporation's financial statement, pointing out that as of December 31, 1934, the corporation showed an accumulated operating deficit of approximately $52,000. However, we think that the manner of treatment of the transaction on the corporation's balance sheet as of December 31, 1935, indicates that such was not the intention. The shares transferred are not shown among the assets in such balance sheet and did not improve the financial statement. Rather, the transaction was reflected as an adjustment of the items making up the capital account, and did not change the amount thereof. Although the "Earned deficit" shown for the year 1935 was about $11,500 less than that shown for 1934, this obviously resulted from operations and not from the transaction in question.

The respondent also contends that the record would support a conclusion that the sons themselves did not consider that a gift had been made to them, inasmuch as in 1939 Walter G. Hitchon, Jr., and Herbert M. Hitchon, as appraisers of the estate of their deceased brother Howard, represented under oath to the Probate Court that Howard's one share of stock in the corporation had a value of $100. The respondent points out that $100 was the par value of one share of stock and was also the original basis of Howard's interest in the

corporation. Irrespective of whether such valuation was a proper valuation, we do not consider the report as intended to represent that the deceased brother at the time of his death did not have a one-fourth interest in the corporation.

There is no intimation in the record that there were any strings attached to the father's transfer of the stock to the corporation whereby he could repossess the shares transferred or cause them to be sold by the corporation. The sons, owning a three-fourth interest in the corporation, could determine whether the corporation would dispose of the stock or continue to hold it as treasury stock. Each son, as owner of a one-fourth interest, would be entitled to receive one-fourth of the assets of the corporation upon liquidation, and it is apparent that each did in fact receive such portion upon liquidation. We think it must have been obvious to Walter G. Hitchon, Sr., that the effect of his action was to decrease his own interest in the corporation and increase the interest of each of his sons. Considering the close family relationship, we think it must be concluded, in the absence of evidence to the contrary, that he intended the normal consequences of his act, and that hence it was his intention to make a gift to each of his sons.[2] We find as a fact, and hold, that he did make a gift to each of them of a 377/1512 interest in the corporation. Accordingly, the transaction is not to be considered as a contribution by him to the capital of the corporation.

A case closely in point, the principle of which we consider controlling here, is *Diebold* v. *Commissioner*, (C.A. 3) 194 F. 2d 266, reversing a Memorandum Opinion of this Court. That case involved a family corporation having 96 shares of stock outstanding which were held equally by seven brothers and a sister, all of whom were directors. By agreement among them, all the stock was deposited with

[2] In an affidavit of the accountant who had served the corporation and its principal stockholders since 1942, submitted to the Internal Revenue Service in 1950 in connection with the examination of the Federal estate tax return of Walter G. Hitchon, Sr., the accountant stated that he had explained to the decedent on one or more occasions beginning in 1942 that in donating all but one share of his stock to the corporation in 1935 he had in effect given each of his three sons a one-fourth interest in the corporation. The respondent contends that this statement indicates that Walter G. Hitchon, Sr., did not in 1935 understand the effect of his transfer to the corporation and therefore did not have the intention of making a donation of any part of his stock interest to his sons.

In the affidavit the accountant also stated in effect that at some time before his death (which appears to have occurred some time between 1946 and 1950) Walter G. Hitchon, Sr., made a gift to each of his three daughters of one-third of his retained one-fourth interest in the corporation and that at the same time the surviving widow of the deceased son, Howard M. Hitchon, made a gift to each of such three daughters of one-sixth of her one-fourth interest in the corporation obtained from her deceased husband. The purpose of the affidavit was, according to its terms, to show that the gifts of the decedent to his daughters were "not made in contemplation of death," but were made for the purpose of "equalization of ownership in the stock of the corporation." It was not directly concerned with the 1935 transaction. Under the circumstances, we cannot agree that the language employed in the affidavit should be construed as having the significance which the respondent urges.

the treasurer of the corporation and made subject to release only upon the consent of five directors. One of the brothers died and bequeathed and devised his residuary estate, including his 12 shares of stock, to the corporation. Thereafter the taxpayer, one of the brothers, sold three-fourths of his stock. The respondent took the position that none of the stock sold had been acquired by bequest and that accordingly no adjustment of the basis of the stock was warranted for purposes of computing gain upon the sale. The court held that the bequest of the stock to the corporation was in substance a bequest of the interest of the deceased stockholder to the other stockholders, who were his brothers and sister, that when the taxpayer sold a portion of his stock he was selling a portion of the stock received by bequest, and that to such extent the basis of the stock sold was, under section 113 (a)(5) of the Internal Revenue Code of 1939, its fair market value at the time received by bequest. The court stated in part:

In some circumstances, analysis of that form of property which we call corporate stock need not proceed beyond the certificate itself and the number of shares it represents. In other situations it is neither realistic nor proper to stop there. For beyond its status as paper of monetary value, the share of stock represents rights of corporate ownership and control. Indeed, where corporate structure is not complicated by various classes of stock and shares are not sold freely as commodities, issued capital stock is significant primarily as the embodiment of proportional interests of ownership and control of the corporate enterprise by those to whom the stock belongs.

We have such a case here. Each of eight members of a family enjoyed, as an owner, a one-eighth interest in the corporate enterprise. This was the essential meaning of each unit of 12 shares viewed as property. In this situation the bequest which effected the surrender and elimination of F. X. Diebold's 1/8 interest resulted immediately in an increase of the proprietary rights of each surviving stockholder to a 1/7 interest in the corporate enterprise. It is true that each survivor still had 12 shares of stock. But it is equally true and more significant that his proportional proprietary interest increased from 7/56 to 8/56. And if this gain in ownership rights to each survivor was the purpose of the devise it is realistic and proper to say that each survivor who originally purchased a 7/56 interest in the corporation acquired as an immediate and necessary legal result of the bequest an additional 1/56 interest.

We recognize that in applying the provisions of the Internal Revenue Code relevant to the determination of a taxpayer's basis for property, distinction must be made between an acquisition of some part of the property and an increase in the value of property already held. But we also think that the foregoing analysis which makes a 1/56 proprietary interest in the corporation new property of the taxpayer rather than an increase in the value of the old is legally sound and merits judicial approval.

\*    \*    \*    \*    \*    \*    \*

Here a gift tax analogy is particularly helpful. Where a single gift has been made to a trust, the transaction has been treated as several gifts to the beneficiaries of the trust for the purpose of permitting the donor more than one statutory $5,000 exemption from taxation. *Helvering* v. *Hutchings*, 1941, 312 U.S. 393, 61 S. Ct. 653, 654. Yet the statute in that case, in terms, exempted the first $5,000 given "to any person" and a trust was expressly declared to be a person

for the purposes of the statute. Sections 504(b) and 1111 of the Revenue Act of 1932, 47 Stat. 169, 247, 289. If under such a statute a gift to a trust may be treated for tax purposes as several gifts to the intended beneficiaries, a bequest of stock of a family corporation, in terms to the corporation itself, may likewise be given effect as a bequest enlarging the proportional holding of the surviving stockholders. * * * Indeed this is an *a fortiori* case, since here, unlike the trust case, the beneficiaries acquire legal rather than equitable interests of ownership as an immediate result of the transaction between other parties. * * *

It is also urged by the Commissioner that the taxpayer has failed to prove that F. X. Diebold's bequest was intended primarily to benefit his brothers and sister. But in the absence of evidence to the contrary, we think such intention must be inferred from the facts before us. The corporation itself was a legal structure for the conduct of a family business. Family ownership and control were closely guarded. The stockholders who survived F. X. Diebold were his nearest relatives and the natural objects of his bounty. We experience no difficulty, therefore, in concluding that he must have intended his benefaction for them.

It follows that the taxpayer's adjusted basis should have included both the cost to him of his original 7/56 interest in the corporation and the value at the time of acquisition of the additional 1/56 interest which the taxpayer acquired through the bequest of decedent's stock to the corporation. * * *

\* \* \* \* \* \* \*

Different analysis is required by the devise and bequest to the corporation—albeit for the benefit of surviving stockholders—of property other than stock of Diebold Investment Company. * * * The devise of miscellaneous property unlike the surrender of Diebold stock, did not enlarge the taxpayer's proportional interest in the corporation. * * * For this reason, there is no warrant for the inclusion of the value of that real property and miscellaneous personalty in the basis of taxpayer's stock. Any other conclusion would require that we ignore the corporate entity of Diebold Investment Company and identify the shareholder with the corporation. Neither reason nor authority permits this. * * *

The respondent argues that *Diebold* v. *Commissioner* is distinguishable on its facts since in that case there was an agreement among the eight stockholders (all of whom were directors) that none of the stock could be released except upon the consent of five of the directors. It is apparently his view that such fact had a bearing upon the court's conclusion that the intention of the decedent was to benefit the stockholders rather than the corporation. However, as we read the opinion in that case, the court's conclusion that it was the intention of the decedent to benefit the other stockholders was based upon the fact that they were his nearest relatives and the natural objects of his bounty. In any event, from a practical standpoint, there is no distinction between the instant case and the *Diebold* case insofar as control of the disposition of the treasury stock is concerned. Here the three sons, by virtue of the transfer by the father, each obtained a one-fourth interest in the corporation, and they therefore, as majority stockholders, officers, and directors, controlled the conduct of the affairs of the corporation.

Our conclusion that Walter G. Hitchon, Sr., made a gift of portions of his interest in the corporation to his sons is based upon the fact that

the net effect of the transfer by him to the corporation of his shares in such corporation was to reduce his interest in the corporation and to proportionately increase the interests of his sons, and not upon the theory that a transfer of property to a corporation is tantamount to a transfer to the stockholders merely because there may be an increase in the value of their existing interests.

In view of the foregoing, we hold that the basis in each case is the original basis of $100, plus the basis in the hands of the transferor of the interest acquired by gift, or a total basis in each case of $37,800.

Reviewed by the Court.

*Decisions will be entered for the petitioners.*

PIERCE, *J.*, dissents.

———

TANNENWALD, *J.*, concurring: I concur in the result reached by the majority opinion. Once it is determined that a gift was intended, I would hold that such a transfer by a stockholder to a corporation is a gift to the other stockholders.[1] Respondent's own regulations confirm this principle. See Gift Tax Regs., sec. 25.2511-1(h)(1). And Congress, in enacting the 1954 Code, similarly confirmed this principle in its discussion of a possible gift in connection with a transfer under section 351. S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 264 (1954); H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. A–117 (1954). I do not agree that there is a difference, in these circumstances, between a transfer by a stockholder to a corporation of its own shares and a transfer of other property, allegedly based on the theory that in the former case there is a proportionate increase in the interests of the other stockholders while the latter case involves merely an increase in the value of the stockholders' existing interests. To the extent that *Diebold* v. *Commissioner*, 194 F. 2d 266 (C.A. 3, 1952), reversing a Memorandum Opinion of this Court, adopts such a distinction, I would not follow it. Furthermore, to the extent that *Frank B. Thompson*, 42 B.T.A. 121 (1940), and *Stephen F. Heringer*, 21 T.C. 607 (1954), affirmed on other grounds 235 F. 2d 149 (C.A. 9, 1956), are inconsistent with the principle set forth above, I would not follow them. In this connection, it is of interest to note that both the *Thompson* and *Heringer* cases were decided before respondent promulgated the gift tax regulation cited above in 1958. See 1958–2 C.B. 627 *et seq.*

———

HOYT, *J.*, dissenting: I must respectfully dissent. There are too many gaps in the petitioners' evidence to permit me to agree with the

———

[1] Since the shares actually ended up in the hands of the corporation, I would view the transaction in its entirety as encompassing a gift to the other stockholders followed by a prorata contribution to capital by all the stockholders.

majority's view that a gift was intended or made by the senior Hitchon to his three sons in 1934 or 1935 when he transferred 1,508 shares of Glen Woolen Mills to the treasury of the family corporation.

The Commissioner's determination that the taxpayers' basis in their stock in Glen Woolen Mills, Inc., was $100 instead of $37,800 as claimed by each taxpayer is presumptively correct. Each son started out owning one share of stock with a cost basis of $100 before 1934. On liquidation in 1960 each shareholder owned the same one share of stock and received thereon a distribution of $61,950.38. The Commissioner determined that the long-term capital gain realized was $61,850.38. I would uphold this determination.

Petitioners contend, but in my view have not established by the evidence, that their basis was increased by $37,700 when their father donated 1,508 shares of stock, having a cost basis in his hands of $150,800, to the company. At that time each son owned one share. After the transfer to the corporation, they each continued to own the same one share and their father had reduced his holdings to one share so that, in effect, each of the four thereafter owned 25 percent of the outstanding corporate shares. It is the resulting increase in fractional stockholding interest which petitioners urge amounted to a gift of the 1,508 shares, not to the transferee corporation but instead to the three sons, individually.

I agree wholeheartedly that such a transfer may well result in a gift to the other family members who are stockholders in a closely held family corporation. However, at the time of the donation by Walter G. Hitchon, Sr., to the corporation of the 1,508 shares, not only did all of the stockholders' and directors' minutes reflect that the donation was *to the corporation*, and that the stock was to be held by it as treasury stock, but the stockholders, who were the senior Hitchon and his three sons, passed a resolution that the directors were authorized to acquire the stock donated for the corporation and "to sell or otherwise dispose of such stock when acquired at such time or times and in such manner as to them may seem advisable." In my view such resolution, in the light of the loss situation disclosed by the company's financial records for 1934 and 1935, is completely incompatible with the years-later hindsight suggestion that a gift to the sons was intended or made at that time. Petitioners produced no evidence that the donor treated or regarded the transfer to the company as a gift to his sons; no evidence of a reported gift or payment of a gift tax was adduced.

The evidence of the corporate minutes, together with the balance sheets and the other evidence discussed in the majority opinion, convinces me that no gifts to the sons were intended or made. In the face of all the evidence indicating no gifts to the sons, the sole evidence relied on by petitioners is that the other shareholders were the donor's

sons. They therefore argue that since they were the natural objects of the donor's bounty, the father must have intended a gift to them when he donated his stock to the company. I find this, standing alone, inadequate. In the absence of any evidence from petitioners that the donor or the donees ever previously regarded or treated the transaction as a gift from father to sons in 1934 or 1935, I would hold for respondent on the record presented to us. Viewing all of the evidence, I cannot conclude that petitioners have met their burden of proof. I accordingly must record this dissent.

RAUM, BRUCE, and WITHEY, *JJ.*, agree with this dissent.