ESTATE OF McCAMANT C. HIGGINS, DECEASED, MACK C. HIGGINS AND CULLEN D. LAWRENCE, CO-EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Higgins v. Commissioner
Docket No. 37909-87
United States Tax Court
T.C. Memo 1991-47; 1991 Tax Ct. Memo LEXIS 66; 61 T.C.M. (CCH) 1789; T.C.M. (RIA) 91047; February 6, 1991, Filed *66 Decision will be entered under Rule 155. D executed a will on Aug. 29, 1980, that contained a formula giving his wife an amount equal to the maximum marital deduction but provided that such amount should, if necessary, be reduced in order to take full advantage of the unified estate and gift tax credit. On Oct. 4, 1982, D transferred, without consideration, 10,269 shares of common stock of Dominion Bankshares Corporation (Dominion) to corporation H. At the time of transfer, D was the controlling shareholder of H. The remaining shareholders of H, with the exception of one shareholder, were all members of D's family. D died testate on Nov. 21, 1983. Held: The formula in D's will is not a "formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction" within the meaning of sec. 403(e)(3), Economic Recovery Tax Act of 1981 (ERTA). Estate of Levitt v. Commissioner, 95 T.C. 289 (1990), followed. Held further: P has failed to meet its burden of proving that D's transfer of 10,269 shares of Dominion common stock to H was not a gift to the shareholders of H. James C. Higgins, for the petitioner. Scott *67 Anderson, for the respondent. RUWE, Judge. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $ 8,604.41. The issues for decision are: (1) Whether the marital deduction should be limited to one-half of decedent's adjusted gross estate because the devise to his spouse contained a maximum marital deduction formula within the meaning of section 403(e)(3)(B) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 305; and (2) whether McCamant C. Higgins' transfer of 10,269 shares of common stock of Dominion Bankshares Corporation to Higgins Oil Company was a taxable gift to the other shareholders of Higgins Oil Company. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect as of the date of the decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Petitioner is the Estate of McCamant C. Higgins, deceased, Mack C. Higgins and Cullen D. Lawrence, coexecutors. McCamant C. Higgins (decedent) died testate on November 21, 1983, at age 84. He was survived by his spouse Lula Higgins. *68 At the time of his death, decedent was domiciled in Virginia. Petitioner's Federal estate tax return (Form 706) was timely filed (pursuant to an extension of time to file the return granted by respondent) with the Internal Revenue Service Center in Memphis, Tennessee, on September 24, 1984. On August 20, 1984, petitioner made a payment with respect to its estate tax liability in the amount of $ 25,245. On July 25, 1986, the estate made an estate tax payment in the amount of $ 54,479. On its estate tax return, petitioner reported a gross estate in the amount of $ 870,472. Petitioner claimed a funeral and administration expense deduction in the amount of $ 58,224, a debt deduction in the amount of $ 84,885, and a marital deduction in the amount of $ 361,306. Upon examination by respondent and after agreement on revaluation of certain assets with the examining agent, the gross estate was determined to be $ 1,233,521. Petitioner was allowed deductions for expenses and debts in the amount of $ 155,378.25. Respondent allowed a marital deduction in the amount of $ 539,071.38, which was equal to one-half of the adjusted gross estate. On July 28, 1987, petitioner timely filed a refund *69 claim (Form 843) with the Internal Revenue Service. Petitioner stated in its claim for refund that, based upon article III, paragraph 2, of decedent's will, it was entitled to a marital deduction in the amount of $ 805,145.51. [1] Respondent disallowed the claim for refund on July 30, 1987. On September 2, 1987, respondent sent petitioner a notice of deficiency. The notice of deficiency advised petitioner that it could include the issue set forth in its claim for refund as part of the petition. Petitioner included this claim in the petition and, accordingly, asks for a determination of an overpayment of its Federal estate tax. Marital Deduction Issue
*70 Decedent's will was executed on August 29, 1980, and was neither revoked nor amended prior to his death. Decedent devised his tangible personal property to his grandchildren, which was reported on petitioner's estate tax return as having a value of $ 4,750. Decedent devised the remainder of his estate, which he designated as his "Residuary Estate" into two trusts. These trusts were designated as the "Wife's Trust" and the "Family Trust." The provision in decedent's will devising his Residuary Estate into the Wife's Trust is contained in article III, which provides as follows: 1. All of the rest, residue and remainder of my estate, hereinafter referred to as my "Residuary Estate," and being what remains of my estate passing under this will, after the payment and satisfaction of all debts, costs of administration and other charges against said estate, including the payment of estate and inheritance taxes payable out of said estate, and the satisfaction of all legacies and devises hereinabove set forth, shall be administered and distributed as directed in this Article and Article IV. 2. If my wife survives me, I bequeath and devise in trust to my Trustees hereinafter appointed, *71 a fractional share of my Residuary Estate determined as follows: (a) the numerator of the fraction determining such share shall be an amount equal to one-half of my adjusted gross estate, as finally determined for Federal estate tax purposes, after deducting from said one-half of my adjusted gross estate the value of all property and interests in property (including life insurance) included in my gross estate for Federal estate tax purposes passing or having passed to or for the benefit of my wife by other provisions of this will, by survivorship, gift or otherwise and which qualify for and are allowed as a part of the Marital Deduction for Federal estate tax purposes; and (b) the denominator of the said fraction shall be the value of my Residuary Estate as finally determined for the said estate tax purposes. The fraction as so determined shall be applied to the value of my Residuary Estate at the time of distribution. Only property which qualifies for the Marital Deduction shall pass to my Trustees under this bequest and devise. The property passing to my Trustees under this paragraph of my will is hereinafter sometimes referred to as my "Wife's Trust." It is my desire to obtain *72 under the Federal estate tax laws the maximum benefit of the Marital Deduction and of the unified gift and estate tax credit; accordingly, the bequest and devise to my Wife's Trust in this paragraph is subject to the following conditions. (i) If the aggregate value of said bequest and devise, together with the value of other property and interests included in my estate for estate tax purposes and passing to or for the benefit of my wife and qualifying for the Marital Deduction under the Internal Revenue Code, is greater or less than the amount allowable for said Marital Deduction, the said bequest and devise shall be reduced or increased so as to make such aggregate value equal to the total amount allowable for the Marital Deduction, subject, however, to the condition set forth in (ii). (ii) The value of the said bequest and devise shall in no event exceed the amount necessary to reduce the estate taxes applicable to my estate to the amount of the unified gift and estate tax credit to which my estate is entitled, and the said bequest and devise shall be reduced to the extent required for that purpose. In article IV of his will, decedent devised the remainder *73 of his Residuary Estate to the Family Trust. The beneficiaries of the Family Trust were decedent's grandchildren. Decedent's surviving spouse had absolutely no rights to either the income or principal of the Family Trust. Article IV of decedent's will provided as follows: 1. I bequeath and devise what then remains of my Residuary Estate, both real and personal, howsoever held and wheresoever situated, hereinafter referred to as my "Family Trust," to my Trustees hereinafter appointed to be administered by said Trustees as hereinafter set forth. 2. My Family Trust shall be divided into as many equal shares as there are grandchildren of mine then living and grandchildren of mine who have theretofore died leaving issue then living, and such shares shall be administered as follows: One of such equal shares shall be paid and delivered to each such grandchild then living who shall have attained the age of thirty-five (35) years, one of such shares shall be held by the Trustees for the benefit of each such grandchild then living who shall not have attained that age, and one of such equal shares shall be divided, per stirpes, among the issue then living of each such grandchild *74 who has theretofore died leaving issue then living, subject to the provisions hereinafter contained with respect to the share of issue under the age of majority. My Trustees shall invest and reinvest so much of the share of a grandchild as is held by my Trustees and pay the net income therefrom to the grandchild or expend the same for the benefit of the grandchild as long as he or she lives. When a grandchild, whose share is held by my Trustees, shall have attained thirty-five (35) years of age, my Trustees shall pay to the grandchild so much as remains of his or her share in my estate. If a grandchild dies while any part of the grandchild's share is held by my Trustees, so much as is so held shall be paid and delivered to the grandchild's estate. If issue under the age of majority become entitled to a share under the foregoing provision, then his or her share shall be retained by my Trustees for the benefit of such issue, and so much of the income and principal thereof as my Trustees deem proper for the welfare, education, maintenance and support of the issue, for whom it is held, shall be paid to or expended for such issue until he or she attains the age of majority, at which *75 time, so much as remains thereof shall be paid and delivered to such issue in fee simple; but if any such issue, for whom a share is held by my Trustees, dies before attaining the age of majority, then, at such issue's death, so much as remains of his or her share shall be paid to his or her estate. If, under the foregoing provisions, the share of a person, who is a minor under the age of majority is retained by my Trustees, such Trustees, in addition to the other powers vested or conferred upon them, shall have the right at any time to deliver such share to a parent of such minor, a person standing in loco parentis to the minor, or a guardian of the minor to be used for the education, maintenance and support of the minor, or may deliver the same to an adult person or a corporation authorized to do a trust business as custodian for the minor under the Uniform Gifts to Minors Act to be held by such custodian under the terms of said Act, and the receipt of the person or corporation to whom so delivered shall be a full and complete release of my Trustee, and the person or corporation to whom it is delivered shall not be required to account for the use of what is so delivered. 3. The *76 proceeds of any life insurance upon my life, which are payable to the Trustees under this my will, shall be administered as a part of my Family Trust in the same manner as if they had been a part of my testamentary estate and transferred to the Trustees of said Trust by my Executor, except and subject to the condition that if the funds or other property available to my Executor for the purpose are not sufficient to enable my Executor to pay the estate and inheritance taxes and other charges payable out of my estate, my Trustees shall pay to my Executor out of the proceeds of such insurance so much as my Executor shall state in writing is required when added to other funds and property available for the purpose to enable my Executor to pay said taxes and other charges.
Gift Issue
The Higgins Oil Company was organized in 1947 in the Commonwealth of Virginia. Higgins Oil Company engaged in wholesale and retail sales of petroleum products. [2] On October 4, 1982, the following individuals were the Higgins Oil Company shareholders of record: Name
Number of Shares
McCamant C. Higgins
3,242
Lula B. Higgins, Wife of McCamant C. Higgins
90
Deborah Higgins, Granddaughter of McCamant C.
327
Higgins
Sandra Higgins, Granddaughter of McCamant C.
385
Higgins
Mack H. Higgins, Grandson of McCamant C. Higgins
412
Trust F/B/O Deborah Higgins
76
Trust F/B/O Clark Higgins, Grandson of McCamant
412
C. Higgins
Trust F/B/O/ of Sharon Higgins, Step-granddaughter
76
of McCamant C. Higgins
Trust F/B/O Sandra Higgins
6
Cullen D. Lawrence
3
Total shares
5,029
*77 In October 1982, Higgins Oil Company was approximately 8 months in arrears on payments on a note due Grayson National Bank. The note had a face amount of $ 100,000, and required monthly payments of $ 10,000 principal plus interest at 18 percent per annum. The note was dated October 5, 1981, and had been endorsed by decedent. In addition, decedent pledged 10,269 shares of common stock of Dominion Bankshares Corporation (Dominion), registered in his name, as security for payment of the corporate note. Higgins Oil Company was also approximately 12 months in arrears on payments that it owed on a $ 365,000 line of credit from First National Bank. Higgins Oil Company also owed debts, of unspecified amounts, to other banking institutions and to its suppliers. In addition, since approximately 1980, Higgins Oil Company had been conducting business on a cash-on-delivery basis with its petroleum *78 suppliers. On October 4, 1982, decedent transferred the 10,269 shares of Dominion common stock to Higgins Oil Company. Higgins Oil Company did not issue additional shares of common stock to decedent for the transfer. Higgins Oil Company did not execute any instrument evidencing an indebtedness to decedent for the transfer. At the time of the transfer, the shares of Dominion common stock had a fair market value of $ 13.9375 per share. The total value of these shares was $ 143,124.18. On November 8, 1982, Higgins Oil Company sold the 10,269 shares of Dominion common stock for $ 153,638. Of the proceeds from the sale, $ 80,000 went to the payment of the $ 100,000 note due Grayson National Bank. The remaining proceeds were used to pay taxes and to purchase inventory items. On its corporate Federal income tax return (Form 1120) for the taxable year ended June 30, 1983, Higgins Oil Company reported gain, in the amount of $ 146,138, from the sale of the Dominion common stock. The gain was computed by using a carryover basis, in the amount of $ 7,500, from the decedent. Higgins Oil Company reflected the sale of the Dominion common stock, on its accounting records, by a debit to *79 cash on deposit and a credit to retained earnings (surplus). By an adjusting entry on June 30, 1983, the gain of $ 146,138 was reclassified to current income for reporting purposes. Respondent determined that the shares of Dominion common stock that decedent transferred to Higgins Oil Company constituted a taxable gift to the other shareholders of Higgins Oil Company. Respondent computed the value of the gift as follows: Higgins Oil Co. shares outstanding on 10/04/82
5,029 Value of gift per share - $ 143,124.18/5,029 =
$    28.46 Shares outstanding owned by other than decedent or spouse
1,697 Shares outstanding owned by spouse
90 1. Value of gift to spouse - 90 x $ 28.46
$ 2,561.40 2. Value of gift to other than spouse - 1,697 x 28.46 =
48,296.62 3. Total
$ 50,858.02 4. Less: 1/2 of 2 attributable to spouse
(24,148.31)
5. Total
$ 26,709.71 6. Less: Marital deduction for gifts to spouse
(2,561.40)
Taxable gifts by decedent
$ 24,148.31 In determining the amount of the deficiency, respondent added $ 24,148.31, as an adjusted taxable gift, to petitioner's taxable estate. OPINION Marital Deduction Issue
The first issue for decision is whether *80 decedent's devise to his spouse contained a maximum marital deduction formula within the meaning of section 403(e)(3)(B) of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 305. When decedent executed his will in 1980, the maximum estate tax marital deduction, under section 2056(c), was limited to the greater of $ 250,000 or one-half of the value of the adjusted gross estate. Section 403(a)(1)(A) of ERTA removed these dollar limits on the marital deduction for estates of decedents dying after December 31, 1981. The effect of ERTA section 403(a)(1)(A) was to permit an unlimited marital deduction. Congress was aware, however, that many testators had executed wills (and trusts) prior to ERTA containing maximum marital deduction formula clauses with the expectation that bequests pursuant to such formulas would be limited to the greater of $ 250,000 or one-half of the adjusted gross estate. The new unlimited marital deduction, when used in these formula bequests, might increase the bequest to the surviving spouse. Congress was concerned that this might distort a decedent's intention in that many testators did not want to pass more than the greater of $ 250,000 *81 or one-half of their adjusted gross estate to their spouse. S. Rept. 97-144, 1981-2 C.B. 412, 462; H. Rept. 97-201, 1981-2 C.B. 352, 379-380. Congress, therefore, enacted a transitional rule. This transitional rule is contained in section 403(e)(3) of ERTA and provides, in pertinent part, as follows: (3) If -- (A) the decedent dies after December 31, 1981, (B) by reason of the death of the decedent property passes from the decedent or is acquired from the decedent under a will executed before the date which is 30 days after the date of the enactment of this Act, * * * which contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law, (C) the formula referred to in subparagraph (B) was not amended to refer specifically to an unlimited marital deduction at any time after the date which is 30 days after the date of enactment of this Act, and before the death of the decedent, and
(D) the State does not enact a statute applicable to such estate which construes this type of formula as referring to the marital deduction allowable by Federal law *82 as amended by [section 403(a) of ERTA], then the amendment made by * * * [section 403(a) of ERTA] shall not apply to the estate of such decedent. [1981-2 C.B. 326-327.] The parties agree that the conditions of subparagraphs (A) and (C) of section 403(e)(3) are satisfied. The parties also agree that the condition contained in subparagraph (D) has been satisfied. The parties stipulated that "Virginia has not enacted a statute which construed existing maximum marital deduction formula clauses as referring to the unlimited marital deduction." We have accepted and relied upon the parties' stipulation for purposes of deciding this case. We wish to make clear, however, that in this respect, we are not deciding whether the parties' stipulation is a correct interpretation of the Virginia law. [3]
Petitioner contends *83 that article III of decedent's will does not contain a maximum marital deduction formula within the meaning of section 403(e)(3)(B). Thus, petitioner's position is that the estate is entitled to the unlimited marital deduction available under section 2056 as in effect on the date of decedent's death (November 21, 1983). Respondent contends that article III of decedent's will contains a maximum marital deduction formula within the meaning of section 403(e)(3)(B) of ERTA and that section 2056, as in effect prior to its amendment by ERTA, limits the marital deduction of the decedent to one-half of the value of the adjusted gross estate. Decedent devised a fractional share of his Residuary Estate to his Wife's Trust. The numerator of this fractional share consisted of one-half of petitioner's adjusted gross estate, less the value of property and interests qualifying for the marital deduction included in petitioner's gross estate that passed through other provisions in decedent's will or outside the will. The denominator consisted of the entire value of decedent's Residuary Estate. The will further provided that the devise to the Wife's Trust was to be reduced or increased so as *84 to make such aggregate value equal to the total amount allowable for the Marital Deduction. However, decedent's will then provided that the maximum marital deduction amount devised to the Wife's Trust was to be reduced as follows: The value of the said bequest and devise shall in no event exceed the amount necessary to reduce the estate taxes applicable to [decedent's] estate to the amount of the unified gift and estate tax credit to which [decedent's] estate is entitled * * *.
Petitioner argues that the formula in decedent's will is not a "maximum marital deduction formula" within the meaning of section 403(e)(3)(B), and that decedent did not intend to limit the bequest to his wife to the greater of one-half of his adjusted gross estate or $ 250,000. Respondent argues that the formula in the will is a maximum marital deduction formula, and that the language of the will demonstrates that decedent intended to limit the wife's bequest to the greater of one-half of the adjusted gross estate or $ 250,000, and intended that the remainder be placed in the Family Trust to benefit decedent's grandchildren. This case was tried and briefed prior to our opinion in *85 Estate of Levitt v. Commissioner, 95 T.C. 289 (1990). In Estate of Levitt v. Commissioner, supra, we considered a formula which provided the same disposition as the formula in the instant case. The formula in Estate of Levitt provided that the spouse's trust was to consist of: (ii) The Marital Deduction Amount consisting of that amount * * * which will equal the maximum marital deduction allowable * * * reduced by the * * * values of all other property * * * which pass or have passed to Spouse under other provisions of this Trust or otherwise and qualify for the marital deduction; provided that such amount shall be reduced by an amount, if any, needed to increase my taxable estate to the largest amount that will not result in a federal estate tax being imposed * * *, after allowing for the unified credit which has not been claimed for transfers made by me during my life and all other available credits * * *. [Estate of Levitt v. Commissioner, supra at 290.]
In Estate of Levitt, we concluded that the provision reducing the marital bequest by an amount needed to increase the taxable estate in order to *86 take full advantage of the unified credit was not a maximum marital deduction formula within the meaning of ERTA section 403(e)(3)(B) because it provided for a bequest that was less than the maximum marital deduction. 95 T.C. at 299. The following reasoning, which we articulated in Estate of Levitt, is equally applicable to the testamentary language in the instant case. Without question, the Trust formula initially provides that the spouse will receive under the Trust the maximum marital deduction amount. The amount for the benefit of the spouse under the Trust, but not the maximum marital deduction amount, is then reduced by the value of other property also qualifying for the marital deduction passing to the spouse outside of the Trust. If the Trust formula stopped at that point, the intention would seem clear to provide the surviving spouse with the pre-ERTA maximum marital deduction amount. But the Trust language does not stop at that point. It goes on to provide that the maximum marital deduction amount is to be reduced by an amount necessary to increase the taxable estate to the largest amount that will not result in a Federal estate tax after *87 allowing the unified credit. The Trust formula thus does not expressly provide that "the spouse is to receive the maximum amount of property qualifying for the marital deduction" -- it expressly provides substantially less. The Trust therefore does not contain a formula within the literal terms of section 403(e)(3)(B). * * * * * * the formula in the present case reduces the maximum marital deduction amount not only by the amount of property qualifying for the marital deduction passing to the spouse outside of the trust but also by the amount of property needed to ensure that the unified credit and other credits of the estate are fully utilized. Thus, the formula in the present case does not provide, even when all amounts passing to the spouse are considered, that the spouse will receive the maximum amount of property qualifying for the marital deduction. * * * * * *
Section 403(e)(3)(B) requires that a will or trust contain a "formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable." (Emphasis added.) In Estate of Bruning v. Commissioner, supra, we analyzed the legislative *88 history of section 403(e)(3) and concluded that "Congress was not concerned with clauses that merely mention the maximum marital deduction, but with clauses under which the amount of property transferred to the surviving spouse is determined solely by reference to the maximum marital deduction." (Emphasis added.) T.C. Memo 1988-5, 1988 Tax Ct. Memo LEXIS 5, 54 T.C.M. (CCH) 1469, 1471, T.C.M. (RIA) P88005 at 30, 32. * * * We conclude by noting that to date the decided cases which have considered maximum marital deduction formula provisions not containing a diminution to utilize the maximum unified estate tax credit have uniformly supported respondent's position here. See Estate of Bauersfeld v. Commissioner, [T.C. Memo 1988-224]; Liberty National Bank & Trust Co. v. United States, [867 F.2d 302 (6th Cir. 1989)]; Estate of Christmas v. Commissioner, [91 T.C. 769 (1988)]; * * *. On the other hand, the cases dealing with marital deduction formula provisions which do contain a diminution provision utilizing the maximum estate tax unified credit, with the sole exception of Estate of Blair v. Commissioner, [T.C. Memo 1988-296], support *89 petitioner's position. See Estate of Neisen v. Commissioner, [89 T.C. 939 (1987), affd. per curiam 865 F.2d 162 (8th Cir. 1988)], and Estate of Bruning v. Commissioner, [888 F.2d 657 (10th Cir. 1989), affirming a Memorandum Opinion of this Court] * * *. [Estate of Levitt v. Commissioner, 95 T.C. at 295-296, 297, 298, 303; emphasis in original.[4]] The quoted portions *90 from Estate of Levitt make it abundantly clear that a formula providing a surviving spouse with anything less than the maximum marital deduction amount is not within the purview of section 403(e)(3)(B). We, therefore, conclude that the provision in article III of decedent's will is not a "formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction" as specified in ERTA section 403. Estate of Levitt v. Commissioner, supra at 298. (Emphasis in original.) Absent such a maximum marital deduction formula, the transitional rule of ERTA section 403(e)(3)(B) is inapplicable. The inapplicability of ERTA section 403(e)(3) does not necessarily determine the amount of the marital deduction. It would normally be necessary to determine the amount of the marital bequest in order to determine the marital deduction. In the instant case, the amount of the deduction would be determined by the value of property passing to the Wife's Trust under the will. This, in turn, would generally depend upon the construction of the will under State law. See Estate of Fine v. Commissioner, 90 *91 T.C. 1068, 1073 (1988), affd. without published opinion 885 F.2d 879 (11th Cir. 1989). On brief, however, respondent concedes that "If the transitional rule [ERTA section 403(e)(3)] is not applicable, there is no limit on the amount of the marital deduction and the majority of the decedent's residuary estate passes in trust to his wife." (Emphasis added.) It is clear that both parties believed and intended that the marital deduction issue was to be determined solely by our decision as to whether ERTA section 403(e)(3) applies. With that understanding, this issue was submitted on evidence that was completely stipulated. We, therefore, find that the unlimited marital deduction should be used for purposes of applying the formula in decedent's will. Gift Issue
Respondent determined that decedent's transfer of 10,269 shares of Dominion common stock constituted a gift to the shareholders of Higgins Oil Company. Accordingly, respondent added $ 24,148.31, as adjusted taxable gifts, to petitioner's taxable estate. Respondent's determination is presumed correct, and petitioner bears the burden of proving otherwise. Rule 142(a).
Section 2001(a) imposes a tax *92 on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. The tax imposed is equal to the excess of the tentative tax on the sum of the amount of the taxable estate and the amount of adjusted taxable gifts, over the amount of tax which would have been payable as a gift tax with respect to gifts made by a decedent after December 31, 1976. Sec. 2001(b). The term "adjusted taxable gifts" means the total amount of taxable gifts (within the meaning of section 2503) made by a decedent after December 31, 1976, other than gifts which are includable in the gross estate of the decedent. Sec. 2001(b). Section 2503(a) defines "taxable gifts" as the total amount of gifts made during the calendar year, less certain statutory deductions. Thus, decedent's transfer of 10,269 shares of Dominion common stock constitutes an adjusted taxable gift within the meaning of section 2001, only if it is also a taxable gift within the meaning of section 2503. See Estate of DiMarco v. Commissioner, 87 T.C. 653, 657 (1986). If property is transferred for less than adequate and full consideration in money or money's worth, the amount by *93 which the value of the property exceeds the value of the consideration is deemed a gift. Sec. 2512(b); Commissioner v. Wemyss, 324 U.S. 303, 89 L. Ed. 958, 65 S. Ct. 652 (1945); Georgia Ketteman Trust v. Commissioner, 86 T.C. 91, 96 (1986); Harwood v. Commissioner, 82 T.C. 239, 257 (1984), affd. without published opinion 786 F.2d 1174 (9th Cir. 1986). A transfer of property to a corporation for less than adequate and full consideration generally represents a gift by the donor to the individual shareholders of the corporation to the extent of their proportionate interests in the corporation. Sec. 25.2511-1(h)(1), Gift Tax Regs.; [5]Kincaid v. United States, 682 F.2d 1220, 1224 (5th Cir. 1982); Chanin v. United States, 183 Ct. Cl. 840, 393 F.2d 972 (1968); Tilton v. Commissioner, 88 T.C. 590, 597 (1987); Estate of Hitchon v. Commissioner, 45 T.C. 96, 103-104 (1965). However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent) *94 will be considered as made for an adequate and full consideration in money or money's worth. Sec. 25.2512-8, Gift Tax Regs. Petitioner argues that decedent's transfer was made in the ordinary course of business within the meaning of the gift tax regulations and, therefore, *95 should be considered as made for full and adequate consideration in money or money's worth. At trial, petitioner presented evidence showing that Higgins Oil Company was experiencing financial difficulties, that it was in arrears on several of its debt obligations, and that the decedent had pledged the Dominion common stock as collateral in order to secure Higgins Oil Company's $ 100,000 note to Grayson National Bank. Decedent was the controlling shareholder of Higgins Oil Company and also a member of its board of directors. With the exception of one shareholder, all of the shareholders of Higgins Oil Company were members of decedent's family, a fact which is indicative of a gift. See Kincaid v. United States, supra; Tilton v. Commissioner, supra, Estate of Hitchon v. Commissioner, supra.There is no evidence in the record that decedent's transfer of 10,269 shares of Dominion common stock to Higgins Oil Company was a transaction conducted at arm's length. We do not believe that a third party bargaining at arm's length would have transferred an asset valued at over $ 143,000 without any type of consideration. *96 Decedent did not receive any additional stock in Higgins Oil Company in exchange for the transfer of Dominion common stock, and there is no evidence that such transfer was intended as, or considered to be, a loan from decedent to Higgins Oil Company. Petitioner also argues that decedent transferred the Dominion common stock to Higgins Oil Company in order to satisfy his liability, as an endorser, on the $ 100,000 note from Higgins Oil Company to Grayson National Bank. Payment of another's debt as a result of one's status as an endorser or guarantor would normally cause the guarantor to become the creditor of the primary debtor. As previously mentioned, there is no evidence that this was intended or actually occurred. Also, there is no evidence in the record that Grayson National Bank was attempting to collect the note from decedent as an endorser. The evidence does show that decedent transferred the Dominion common stock in order to avoid recognition of gain from the sale of the stock. [6]
*97 We find that petitioner has failed to meet its burden of proving that decedent's transfer of 10,269 shares of Dominion common stock was not a gift to the other shareholders of Higgins Oil Company. Accordingly, we find for respondent on this issue. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Petitioner further explained that the taxable estate, after application of the marital deduction, would be $ 275,000.00, which is the equivalent value of the section 2010 unified credit. However, application of the marital deduction in the amount requested by petitioner in its claim for refund would result in a taxable estate in the amount of $ 272,997.24.↩
2. The operating assets of Higgins Oil Company were sold in September 1983, and several years later it was completely liquidated.↩
3. See Va. Code Ann. sec. 64.1-62.1↩ (1987), which contains rules of construction for wills executed prior to the enactment of ERTA that contain marital deduction formulas.
4. In Estate of Levitt v. Commissioner, 95 T.C. 289, 299-300 (1990), we concluded that the result reached in Estate of Blair v. Commissioner, T.C. Memo 1988-296, incorrectly applied our decisions in Estate of Neisen v. Commissioner,89 T.C. 939 (1987), affd. per curiam 865 F.2d 162 (8th Cir. 1988), and Estate of Bruning v. Commissioner, T.C. Memo 1988-5, affd. per curiam 888 F.2d 657 (10th Cir. 1989), and we expressly disapproved our decision in Estate of Blair↩.
5. Section 25.2511-1(h)(1), Gift Tax Regs., provides: (h) The following are examples of transactions resulting in taxable gifts and in each case it is assumed that the transfers were not made for an adequate and full consideration in money or money's worth: (1) * * * A transfer of property by B to a corporation generally represents gifts by B to the other individual shareholders of the corporation to the extent of their proportionate interests in the corporation. However, there may be an exception to this rule, such as a transfer made by an individual to a charitable, public, political or similar organization which may constitute a gift to the organization as a single entity, depending upon the facts and circumstances in the particular case.↩
6. In addition to petitioner's argument that decedent had a "valid business purpose" for transferring the Dominion common stock to Higgins Oil Company, petitioner acknowledges that the transfer was also "done as a tax motivated transaction to utilize the Company's Net Operating Loss Carryforwards to offset a $ 146,000 gain realized from the sale of the stock."↩