T.C. Memo. 1998-251


UNITED STATES TAX COURT


ESTATE OF MARIO E. BOSCA, DECEASED, MARIE A. BAKER
FORMERLY MARIE A. BOSCA, EXECUTOR, Petitioner
v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 14997-94, 15051-94.    Filed July 8, 1998.


Harvey Dunn, for petitioner.

Jeffrey L. Bassin and Stephen J. Neubeck, for
respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, Judge:  Respondent issued notices of
deficiency to the Estate of Mario E. Bosca, deceased, in
which respondent determined the following estate and gift
tax deficiencies:

Docket No. 14997-94:

| Type of Tax | Period | Date of Death | Deficiency |
|---|---|---|---|
| Estate | 1990 | 9/5/90 | $204,900 |

Docket No. 15051-94:

| Type of Tax | Period | | Deficiency |
|---|---|---|---|
| Gift | 1989 | -- | $46,517 |
| Gift | 1990 | -- | 782,159 |

By an amended answer filed in each of the above cases, respondent asserts that the estate tax deficiency is $2,157,593, rather than the above amount determined in the notice of deficiency, and that the gift tax deficiency for 1990 is $1,581,641, rather than the above amount determined in the notice of deficiency.

After concessions, the issue for decision in these consolidated cases is the value of the gifts that the decedent made to his two sons by means of a 1990 transaction in which he and his wife exchanged voting common stock in his closely held corporation for nonvoting common stock with the result that his sons ended up owning all of the voting stock of the corporation.

FINDINGS OF FACT

Some of the facts have been stipulated by the parties and are so found. The stipulation of facts filed by the

parties and the attached exhibits are incorporated herein by this reference. Mr. Mario E. Bosca, the decedent, died testate on September 5, 1990. He was a resident of the State of Ohio at the time of his death. He was survived by his wife of many years, Mrs. Marie A. Baker, formerly known as Ms. Marie A. Bosca, and their two sons, Mr. Christopher B. Bosca and Mr. Anthony G. Bosca. Ms. Baker, the executrix of the decedent's estate, resided in Ohio at the time the petitions were filed.

Hugo Bosca Co., Inc.

In 1912, the decedent's father, Mr. Hugo Bosca, started manufacturing and selling leather products, such as wallets, billfolds, and purses. Initially, he had two partners, but he became the sole owner of the business sometime in the 1930's. In 1948, Mr. Hugo Bosca's two sons, Mr. Orsino H. Bosca and the decedent, became the principal owners of the business, and they caused it to be incorporated in the State of Ohio as the Hugo Bosca Co., Inc. (referred to herein as HBC). Some years later, effective January 1, 1989, HBC elected to be treated as a subchapter S corporation.

After the decedent and his brother obtained ownership of HBC, the brother became HBC's vice president and treasurer. He oversaw the financial management of the

business, and he was involved in HBC's advertising and marketing and its promotional campaigns. The decedent became HBC's president. His duties included designing the leather products to be sold, purchasing the materials, and overseeing their manufacture.

Under its original articles of incorporation, HBC was authorized to have outstanding a maximum of 2,500 shares of stock, of which 2,000 could be common shares with a par value of $100 each, and 500 could be preferred shares with a par value of $100 each. On or about November 3, 1980, HBC issued a certificate for 805 shares of voting common stock to Mr. Orsino Bosca and a certificate for an equal number of shares to the decedent. The stock represented by those certificates was the only outstanding stock of HBC at the time.

1981 Buy-Sell Agreement and Mr. Orsino Bosca's Death

From time to time, the decedent and his brother entered into buy-sell agreements with HBC under which HBC agreed to purchase its own stock from the estate of the shareholder who was the first to die. The October 8, 1981, buy-sell agreement provides in part as follows:

> (1) Upon the death of the first to die of Orsino H. Bosca and Mario E. Bosca [the decedent], the Corporation [HBC] shall within seven months after the appointment of an executor, administrator or

- 5 -

> other legal representative of the estate of such decedent purchase all of the shares owned by such decedent at his death, together with any shares previously transferred by such decedent to his wife or lineal descendants, and the decedent's estate and any other holder of such shares shall sell and transfer to the corporation all of such shares, including shares previously transferred by decedent as aforesaid, at the price provided below, and the Seller(s) shall endorse and deliver to the Corporation the certificates evidencing such shares purchased and sold under this Agreement.

The agreement further provides that the purchase price to be paid for the stock was the book value at the end of the month preceding the shareholder's death.

Mr. Orsino Bosca died on November 27, 1986. On July 6, 1987, HBC purchased Mr. Orsino Bosca's 805 shares of stock as required by the October 8, 1981, agreement. HBC agreed to pay $1,670 per share, for a total purchase price of $1,344,350 (805 shares of stock x $1,670). Pursuant to the terms of the October 8, 1981, agreement, HBC made a downpayment in the amount of the proceeds from insurance policies on the life of Mr. Orsino Bosca, $970,414.04. HBC was to pay the balance, $373,935.86, in annual installments over 10 years, together with interest at the annual rate of 9 percent. After the purchase, the decedent's 805 shares of voting common stock were HBC's only outstanding stock.

Directors and Officers of HBC

On July 22, 1987, the decedent elected himself, his wife, and Mr. S.F. Sander to serve as directors of HBC. Mr. Sander was a certified public accountant who was retained by HBC. The decedent served as a director of HBC until his death.

On July 23, 1987, the directors of HBC approved the decedent's transfer of 50 percent of his HBC stock to his wife, Ms. Marie Baker. After that, the decedent and his wife each owned 402.5 shares of HBC's voting common stock. On July 24, 1987, the directors elected the decedent president, Mr. Christopher Bosca vice president and treasurer, and Mr. S.F. Sander secretary. The decedent served as president of HBC until his death.

Estate Planning

In mid-1987, the decedent was diagnosed with lung cancer. On August 21, 1987, he underwent surgery for the removal of a part of one lung. The decedent returned to work after the surgery and continued working for HBC until May 1990.

Sometime in 1988, the decedent and his wife hired an attorney, Mr. Fredrick L. Fisher, to give them estate planning advice. Mr. Fisher drafted several wills for the decedent, the last of which was executed on May 25, 1990.

Mr. Fisher first learned that the decedent had lung cancer in October 1989 during a meeting with Mr. Christopher Bosca and the decedent. In February 1990, Mr. Fisher learned that the decedent's cancer was terminal.

During a meeting with Mr. Fisher on October 17, 1989, the decedent asked Mr. Fisher for advice about transferring voting control of HBC to his sons, Mr. Christopher Bosca and Mr. Anthony Bosca. Mr. Fisher recommended a plan of recapitalization. In February 1990, Mr. Fisher spoke to all four members of the Bosca family about the recapitalization plan.

## Ms. Marie Baker's Transfers of Stock in 1989

On January 2, 1989, Ms. Baker transferred 55 of her 402.5 shares of HBC's voting common stock to each of her two sons. The parties to these cases agree that the fair market value of each share of HBC stock at that time was $8,708. Accordingly, Ms. Baker transferred HBC stock worth $478,940 (55 shares of stock x $8,708) to each son. After the transfers, HBC's stock was owned as follows:

| Shareholders | Voting Common Stock | Percent |
|---|---|---|
| Decedent | 402.5 | 50.00 |
| Marie Baker | 292.5 | 36.34 |
| Anthony Bosca | 55.0 | 6.83 |
| Christopher Bosca | 55.0 | 6.83 |

805.0                    100.00

The 1990 Recapitalization

On May 25, 1990, all of the shareholders of HBC
adopted a resolution amending HBC's articles of
incorporation to allow the corporation to have outstanding
a maximum of 2,500 shares of stock, consisting of 1,500
shares of class A voting common stock and 1,000 shares of
class B nonvoting common stock.  The resolution states as
follows:

> FOURTH: the maximum number of shares which the
> Corporation is authorized to have outstanding
> is twenty-five hundred (2500) consisting of 1500
> Class A voting common shares having a par value
> of $100.00 each and 1000 Class B non-voting
> common shares having a par value of $100.00 each.
> Each class of shares shall be identical in all
> respects, except that the Class B non-voting
> shares shall carry no right to vote for the
> election of directors of the Corporation, and
> no right to vote on any matter presented to the
> shareholders for their vote or approval except
> where otherwise provided by law.

On the same day, the decedent and Mr. Sander, acting as
president and secretary, respectively, of HBC, executed a
certificate of amendment to HBC's articles of
incorporation.

On May 25, 1990, the directors of HBC also adopted
the following resolutions:

RESOLVED, that the Plan and Agreement of Recapitalization attached hereto as Exhibit "A" (the "Plan") be adopted, subject to approval of all shareholders of the Corporation;

RESOLVED, FURTHER, that each officer of the Corporation be authorized, upon shareholder approval of the Plan, to execute and deliver the Plan on behalf of the Corporation and to take any other action, including without limitation the execution of other agreements, instruments or documents and the making of filings with appropriate governmental entities or other persons, which such officer deems necessary or appropriate to consummate, or as a result of, the transactions contemplated by the Plan.

The Plan and Agreement of Recapitalization (referred to herein as the recapitalization agreement) attached to the above resolutions as exhibit "A" states as follows:

## PLAN AND AGREEMENT OF RECAPITALIZATION

This Plan and Agreement of Recapitalization is entered into this  25  day of May, 1990, by and between Mario Bosca, Marie Bosca and the Hugo Bosca Company, Inc., an Ohio corporation (the "Corporation").  Mario Bosca and Marie Bosca are sometimes hereafter referred to as "Shareholders".

### Background Information

A.  There are currently outstanding 805 shares of voting common stock of the Corporation ("Voting Shares").  The Voting Shares have a par value of $100.00 each.  The Voting Shares are currently owned as follows:

        Mario Bosca  - 402.5 Voting Shares
        Marie Bosca  - 292.5 Voting Shares
        Christopher Bosca - 55 Voting Shares
        Anthony Bosca - 55 Voting Shares

B.   The Corporation's Articles of Incorporation have been amended to authorize the issuance of shares of non-voting common stock having a par value of $100.00 each ("Non-Voting Shares").

C.   The Shareholders wish to exchange their Voting Shares for an equal number of Non-Voting Shares and the Corporation desires to issue such Non-Voting shares in exchange for the Shareholders' Voting Shares.

D.   The Board of Directors of the Corporation has deemed it advisable and for the mutual benefit of the Corporation and the Shareholders that such an exchange occur.  Accordingly, the Board of Directors of the Corporation has approved an exchange by the Shareholders of their Voting Shares for an identical number of Non-Voting Shares.

Agreement

1.   <u>Exchange</u>.  Each Shareholder shall transfer all such Shareholder's Voting Shares to the Corporation.  In exchange therefor, their Corporation shall issue to each Shareholder a number of Non-Voting Shares equal to the number of such Shareholder's Voting Shares.

2.   <u>Cancellation of Transferred Voting Shares</u>.  At such time as the Shareholders have transferred their Voting Shares to the Corporation and, in exchange therefor, received Non-Voting Shares of the Corporation, the Voting Shares transferred to the Corporation shall be cancelled.

3.   <u>Miscellaneous</u>.

(a)  This Plan and Agreement shall be construed in accordance with the laws of the State of Ohio.

(b)  Any number of counterparts hereof may be executed and each such counterpart shall be deemed to be an original instrument.

To evidence their acceptance of the terms of this Plan and Agreement, the Corporation has caused this Plan and Agreement to be signed in its corporate name by its duly authorized officer and each of the Shareholders has signed such Shareholder's name hereto.

The decedent's sons, Mr. Christopher Bosca and Mr. Anthony Bosca, were not parties to the recapitalization agreement. However, all of the shareholders of HBC, including the decedent's sons, adopted a resolution approving the agreement and approving HBC's adoption of it.

Pursuant to the terms of the recapitalization agreement, the decedent transferred a certificate representing his 402.5 shares of voting common stock to HBC. Decedent signed a "Stock Transfer Power" which states as follows:

For valuable consideration received, I, Mario Bosca, hereby irrevocably and unconditionally transfer, assign and convey 402.5 shares of common stock of Hugo Bosca Company, Inc., an Ohio corporation ("Corporation"), standing in the name of Mario Bosca on the books and records of such Corporation and represented by certificate number #13, to the Corporation. I hereby irrevocably constitute and appoint Christopher Bosca as attorney-in-fact to transfer said shares of stock on the books and records of said Corporation, with full power of substitution in the premise.

In exchange, HBC issued to the decedent a certificate for 402.5 shares of HBC "common Nonvoting Class B". Similarly, Ms. Baker transferred her 292.5 shares of voting common stock to HBC and received in exchange 292.5 shares of HBC

class B nonvoting common stock. Finally, each of decedent's sons transferred to HBC a certificate for his 55 shares of voting common stock and received in exchange a certificate for 55 shares of "common voting Class A".

As a result of the above transfers, the decedent and his wife owned all of the shares of class B nonvoting common stock and the decedent's sons, Mr. Christopher Bosca and Mr. Anthony Bosca, owned all of the shares of class A voting common stock. Each share of class B nonvoting common stock was identical in all respects to a share of class A voting common stock, except that the share of class B nonvoting common stock had no right to vote for the election of directors or any other matter presented to the shareholders for their vote or approval, unless otherwise provided by law.

## Ms. Marie Baker's Transfer of Stock to the Decedent

On May 25, 1990, the same day as the transfers described above, Ms. Baker also transferred her 292.5 shares of class B nonvoting common stock to the decedent. She signed a "Stock Transfer Power" which states as follows:

> As a gift, I Marie Bosca, hereby irrevocably and unconditionally transfer, assign and convey 292.5 shares of non-voting common stock of Hugo Bosca Company, Inc., an Ohio corporation ("Corpora-tion"), standing in the name of Marie Bosca on

the books and records of such Corporation and represented by certificate number #18, to my husband, Mario Bosca. I hereby irrevocably constitute and appoint Christopher Bosca as attorney-in-fact to transfer said shares of stock on the books and records of said Corporation, with full power of substitution in the premises.

After the transfers, the stock of HBC was owned as follows:

| Shareholders | Class A Voting Common | Class B Nonvoting Common | Voting Stock Percent Owned | Nonvoting Stock Percent Owned |
|---|---|---|---|---|
| Decedent | -- | 695 | -- | 100 |
| Marie Baker | -- | -- | -- | -- |
| Anthony Bosca | 55 | -- | 50 | -- |
| Christopher Bosca | 55 | -- | 50 | -- |
| | 110 | 695 | | |

## Fair Market Value of HBC Stock at the Time of the Recapitalization

The parties have stipulated and, accordingly, we find the following:

(1) The fair market value of each share of the voting common stock of HBC immediately before the recapitalization on May 25, 1990, was $11,827, if the share was part of a block of stock amounting to 50 percent of the outstanding stock of the corporation, and was $9,671, if the share was part of a block of stock amounting to 25 percent of the outstanding stock of the corporation; and, (2) the fair market value of each share of class B nonvoting common

stock immediately after the recapitalization on May 25, 1990, was $9,415, if the share was part of a block of stock amounting to either 50 or 25 percent of the outstanding stock of the corporation.

## The Decedent's Death

The decedent died on September 5, 1990. At the time of his death, he held 695 shares of class B nonvoting common stock in HBC. The fair market value of each share of class B nonvoting common stock at that time was $8,843 per share. Thus, the value of the decedent's stock in HBC at the time of his death was $6,145,885 ($8,843 x 695).

On October 1, 1990, the shareholders of HBC elected Ms. Marie Baker, Mr. Christopher Bosca, and Mr. Anthony Bosca as directors. On the same day, the board of directors elected Mr. Christopher Bosca president, Mr. Anthony Bosca vice president and treasurer, and Ms. Marie Baker secretary.

## The Decedent's Gift and Estate Tax Returns

Ms. Marie Baker, acting in her capacity as executrix of the decedent's estate, filed Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for the 1990 calendar year. A supplement to Schedule A, Computation of Taxable Gifts, attached to the return states as follows:

On May 25, 1990, pursuant to a recapitalization of the stock of the Hugo Bosca Company, Inc., the Donor exchanged his 402.5 shares of voting common stock of the Hugo Bosca Company, Inc., for 402.5 shares of a newly created class of non-voting common stock of the Hugo Bosca Company, Inc.  The non-voting common shares provided the same rights as the voting common shares given up except for the voting rights.  The ownership of the shares of stock immediately before and immediately after the recapitalization was as follows:

|  | | PRE-RECAP | POST-RECAP | |
| --- | --- | --- | --- | --- |
|  | Relationship to Donor | Voting Common | Voting Common | Nonvoting Common |
| Mario Bosca | Donor | 402.5 | -- | 402.5 |
| Marie Bosca | Wife | 292.5 | -- | [1]292.5 |
| Christopher Bosca | Son | 55.0 | 55.0 | -- |
| Anthony Bosca | Son | 55.0 | 55.0 | -- |

Under the facts and circumstances of the recapitalization, it is the Donor's position that the recapitalization did not result in a gift by the Donor.

[1]This schedule does not reflect Ms. Baker's transfer of her HBC stock to the decedent.]

Ms. Baker also filed Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, on behalf of the decedent's estate.  The return reports a total gross estate of $9,604,543.03 and total allowable deductions of $9,008,628.03 for a taxable estate of $595,915.  It also reports adjusted taxable gifts of $527,217 for a total of $1,123,132 subject to tentative tax.  The adjusted taxable gifts reported on the decedent's estate tax return,

$527,217, does not include any amount attributable to the decedent's participation in the recapitalization. Schedule B, Stock and Bonds, of the estate tax return reports that the decedent owned 695 shares of HBC nonvoting common stock when he died and that the value of the stock was $7,575,500 or $10,900 per share.

Among other adjustments made in the notice of gift tax deficiency issued to the decedent's estate, respondent determined that the decedent made gifts to his two sons in connection with the recapitalization. Respondent determined that the aggregate amount of the gifts was equal to the difference between what the decedent gave up, $7,618,117.50 (i.e., 402.5 shares of voting common stock x $18,927 per share), and what he received in return, $5,859,997.50 (i.e., 402.5 shares of class B nonvoting common stock x $14,559 per share). Thus, respondent determined that the decedent made gifts to his two sons in the aggregate amount of $1,758,120. The notice of gift tax deficiency describes this adjustment as follows:

> It is further determined that the donor transferred 402.5 shares of the voting common stock of the Hugo Bosca Company to Christopher Bosca and Anthony Bosca in exchange for the same number of non-voting shares of Hugo Bosca Company stock resulting in a gift of $1,758,120.00 to Christopher Bosca and Anthony Bosca.

Respondent further determined that the decedent's total amount of taxable gifts as of the end of 1990 amounted to $2,491,175, of which the gifts made in connection with the recapitalization are the principal component.

Among other adjustments made in the notice of estate tax deficiency issued to the decedent's estate, respondent determined that the adjusted taxable gifts reported on the decedent's estate tax return, $527,217, should be increased to reflect the gifts determined in the notice of gift tax deficiency, including the gifts made to the decedent's two sons in connection with the recapitalization. The notice of deficiency describes this adjustment in the following terms:

> The amount of $527,217.00 shown on the estate tax return as adjusted taxable gifts is increased $1,963,958.00 as a result of the increase in the amount of adjusted taxable gifts made by the decedent during the years in 1988, 1989 and 1990. Accordingly, it is determined that the amount of adjusted taxable gifts added to the taxable estate is $2,491,175.00.

OPINION

In the gift and estate tax returns that are the subject of these consolidated cases, the decedent's estate took the position that no gifts were made by the decedent when he exchanged voting common stock for nonvoting common

stock in the recapitalization of HBC, described above. Respondent determined in the notice of deficiency and takes the position in these proceedings that the decedent's exchange of stock was a transfer of property for less than adequate and full consideration in money or money's worth, as described in section 2512(b).  Unless stated otherwise, section references concerning the estate tax are to the Internal Revenue Code as in effect on the date of the decedent's death, and section references concerning the gift tax are to the Internal Revenue Code as in effect during the years in issue.  Consequently, respondent determined in the notice of deficiency and argues here that the amount by which the value of the decedent's voting common stock exceeds the value of the nonvoting common stock received in the recapitalization is a gift to the decedent's two sons, the only persons who held voting stock after the transaction.  Respondent's methodology in the notice is the same as respondent's position in these proceedings, but the values differ.  The following schedule summarizes respondent's position in the notice of deficiency and respondent's position at trial:

|  | Notice of Deficiency | Position at Trial |
|---|---|---|
| Value of a share of voting common stock before the recapitalization if held as | $18,927 | [1]$11,827 |

part of a 50-percent block of stock

| | | |
|---|---|---|
| Value of a share of class B nonvoting common stock after the recapitalization if held as part of a 50- or 25-percent block of stock | $14,559 | [1]$9,415 |
| Difference | $4,368 | $2,412 |
| Number of shares | 402.5 | 402.5 |
| Aggregate value of gifts made by the decedent to his sons | $1,758,120 | $970,830 |

[1]Stipulated by the parties.

We note that neither party contends that the special valuation rules of sections 2701 through 2704 apply to the decedent's transfer that is the subject of these cases. See Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec. 11602(a), 104 Stat. 1388-491.

Petitioner argues that by exchanging his voting common stock in HBC for class B nonvoting common stock, the only thing the decedent gave up in the recapitalization was the right to vote his 402.5 shares of stock in HBC. In this connection, petitioner emphasizes that the recapitalization effected no change in the assets, liabilities, or share-holders equity of HBC, either in the absolute or relatively among the shareholders. Thus, according to petitioner, the decedent did not suffer any loss or reduction of his interest in the shareholders equity of HBC. It follows, according to petitioner, that the decedent made no gift in

connection with the recapitalization.  Petitioner also argues that the voting rights attributable to the decedent's 402.5 shares of common stock were of no value to HBC and there was nothing of value that his sons, as shareholders of HBC, received from HBC as a result of the recapitalization.

Notwithstanding its position that no gifts were made, petitioner's principal position is that any gifts made by the decedent must be valued under section 2512(a), not section 2512(b).  Petitioner argues that, at most, the decedent made two simultaneous but separate gifts, one to each of his sons, consisting of "a naked 25 percent of the voting power of HBC with no equity in HBC being transferred."  Petitioner further argues that, under section 2512(a), the aggregate value of the gifts is $24,150; that is, $60 multiplied by the 402.5 shares of stock that the decedent exchanged in the recapitalization. This value is based on the stipulation of the parties that "The per share fair market value of voting rights in the Company, prior to the exchange on May 25, 1990, as part of a 25 percent voting interest with no equity attached to such interest was $60.00."

In the alternative, petitioner argues that if the gifts made through the decedent's participation in the

recapitalization are to be valued under section 2512(b) and section 25.2511-1(h)(1), Gift Tax Regs., as respondent argues, then respondent's valuation is still wrong.  According to petitioner, respondent has incorrectly valued the transaction as a single gift of 50 percent of HBC's stock of which half went to each son, rather than as two gifts of 25 percent of HBC's stock, one to each son. The following schedule compares petitioner's alternative position with respondent's position:

| | Respondent's Position | Petitioner's Alternative Position |
|---|---|---|
| Value of a share of voting stock before the recapitalization if held as part of a 50-percent block of stock | [1]$11,827 | |
| If held as part of a 25-percent block of stock | | [1]$9,671 |
| Value of a share of class B nonvoting common stock after the recapitalization if held as part of a 50- or 25-percent block of stock | [1]$9,415 | $9,415 |
| Difference | $2,412 | $256 |
| Number of shares | 402.5 | 402.5 |
| Aggregate value of gifts made by the decedent to his sons | $970,830 | $103,040 |

[1]Stipulated by the parties.

Petitioner bears the burden of disproving respondent's valuations.  Rule 142(a), Tax Court Rules of Practice and

Procedure.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Section 2501 imposes a tax on the transfer of property by gift.  Sec. 2501(a); sec. 25.2501-1(a), Gift Tax Regs. The gift tax is an excise tax on the transfer of property and is not a tax on the subject of the gift.  Sec. 25.2511-1(a), Gift Tax Regs.  It applies to all gift transfers whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible.  Sec. 2511(a); sec. 25.2511-1(a), Gift Tax Regs.  It applies not only to transfers which, being without valuable consideration, accord with the common law concept of gifts, but also to sales, exchanges, and other dispositions of property not made in the ordinary course of business, to the extent that the value of the property transferred by the donor exceeds the value in money or money's worth of the consideration given therefor.  Sec. 2512(b); Commissioner v. Wemyss, 324 U.S. 303, 306 (1945); sec. 25.2512-8, Gift Tax Regs.

Generally, the value of the property on the date of the gift is considered the amount of the gift.  Sec. 2512(a); sec. 25.2512-1, Gift Tax Regs.  The value of the property is the price at which it would change hands between a willing buyer and a willing seller, neither

being under any compulsion to buy or to sell, and both having reasonable knowledge of the relevant facts. Secs. 25.2512-1, 25.2512-3, Gift Tax Regs.; see also Snyder v. Commissioner, 93 T.C. 529, 539 (1989); Estate of Hall v. Commissioner, 92 T.C. 312, 335 (1989); See generally United States v. Cartwright, 411 U.S. 546 (1973).

We reject petitioner's first argument that the decedent made no gift in connection with the recapitalization. A transfer of property by an individual to a corporation for less than adequate and full consideration in money or money's worth generally represents gifts by the individual to the shareholders of the corporation to the extent of each shareholder's proportionate interest in the corporation. See Kincaid v. United States, 682 F.2d 1220, 1224, 1226 (5th Cir. 1982); Heringer v. Commissioner, 235 F.2d 149, 151 (9th Cir. 1956), modifying and remanding 21 T.C. 607 (1954); CTUW Georgia Ketteman Hollingsworth v. Commissioner, 86 T.C. 91, 97 (1986); sec. 25.2511-1(h)(1), Gift Tax Regs.; cf. Chanin v. United States, 183 Ct. Cl. 840, 393 F.2d 972 (1968). This is no less true when the property transferred to the corporation by the donor is the corporation's own stock.

In these cases, the decedent transferred property to HBC in the form of voting common stock and received in

return other property of less value in the form of nonvoting common stock.  The difference in values between what the decedent gave up and what he received is deemed a gift pursuant to section 2512(b).  Petitioner's argument that the decedent made no gift because no change in the equity of the corporation resulted from the recapitalization or because the decedent only transferred voting rights which were of no value to the corporation disregards the broad and comprehensive meaning of the terms "gift" and "property" as used in section 2512.  The committee reports which accompanied the enactment of a predecessor of section 2501 state as follows:

> The terms "property," "transfer," "gift," and "indirectly" are used in the broadest and most comprehensive sense; the term "property" reaching every species of right or interest protected by law and having an exchangeable value.
>
> The words "transfer * * * by gift" and "whether * * * direct or indirect" are designed to cover and comprehend all transactions (subject to certain express conditions and limitations) whereby, and to the extent * * * that, property or a property right is donatively passed to or conferred upon another, regardless of the means or the device employed in its accomplishment. For example, (1) a transfer of property by a corporation without a consideration, or one less than adequate and fully in money or money's worth, to B would constitute a gift from the stockholders of the corporation to B; (2) a transfer by A to a corporation owned by his children would constitute a gift to the children * * *

H. Rept. 708, 72d Cong., 1st Sess. (1932), 1939-1 C.B. (Part 2) 457, 476-477; S. Rept. 665, 72d Cong., 1st Sess. (1932), 1939-1 C.B. (Part 2) 496, 524.

Petitioner's principal argument is based on the proposition that there is a fundamental difference between the valuation of property under section 2512(a) and section 2512(b). According to petitioner, section 2512(a) applies to a "direct gift"; that is, a transfer in which the donor "makes a gift of property and receives nothing back or receives back some part of which he owned when he made the transfer." On the other hand, section 2512(b) applies to transactions involving "the transfer of property where the property rights received in the exchange are different in whole or in part from those given up." Petitioner's brief summarizes this distinction as follows:

> In short, a transfer that involves relinquishing property with a bundle of rights and receiving back the same property with the bundle of rights reduced is a direct gift with the value of the rights transferred determined under I.R.C. §2512(a). Where a transfer involves relinquishing property with a bundle of rights and receiving some of those rights back, plus others, or totally different rights, the issue of "money's worth" comes up and the valuation is under I.R.C. §2512(b).

According to petitioner, the decedent "made a direct transfer of his voting rights to his sons"; he "did not * * * transfer his voting shares to HBC for less than adequate and full consideration in money or money's worth". Therefore, according to petitioner, "respondents [sic] reliance on §2512(b) and Treas. Reg. §2511-1(h)(1) [sic] has no basis in fact or law, makes no sense, and is a totally unreasonable and unrealistic approach to this case."

We also reject this argument.  First, there is nothing in section 2512 or the cases decided thereunder to suggest that section 2512(a) applies to "direct gifts" in which the donor receives nothing in return or receives some part of the gift, and section 2512(b) applies to other gifts in which the donor receives back property rights that are different from, or in addition to, the donor's property rights in the gift.  Section 2512(a) is a general provision dealing with "gifts" that are "made in property".  It provides that the value of the property on the date of the gift shall be considered the amount of the gift.  Sec. 2512(a).  The statute provides no definition of the term "gift", but, as noted above, Congress intended to use the term in its broadest and most comprehensive sense. Commissioner v. Wemyss, 324 U.S. at 306; H. Rept. 708,

supra, 1939-1 C.B. (Part 2) at 476-477; S. Rept. 665, supra, 1939-1 C.B. (Part 2) at 524. Section 2512(b) applies "Where property is transferred for less than an adequate and full consideration in money or money's worth". If property is so transferred, then section 2512(b) provides that the excess of the value of the property over the consideration received "shall be deemed a gift". Thus, Congress dispensed with the requirement of finding "donative intent" and made every transfer of property, other than one in the ordinary course of business, subject to gift tax to the extent that it is not made for "an adequate and full consideration in money or money's worth". Sec. 2512(b); Commissioner v. Wemyss, supra at 306-307; sec. 25.2512-8, Gift Tax Regs.

Contrary to the premise of petitioner's brief, subsections (a) and (b) of section 2512 do not prescribe different methods of valuing property. The value of the property transferred by gift whether described by section 2512(a) or section 2512(b) is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts. Sec. 25.2512-1, Gift Tax Regs. There is no authority for the premise of petitioner's brief that

the amount of the "gift" determined under section 2512(a) differs from the amount "deemed a gift" under section 2512(b).

Second, we agree with respondent's approach in these cases under which respondent measured the difference between the value of the 402.5 shares of voting stock that the decedent transferred to the corporation and the value of the 402.5 shares of nonvoting stock that he received in return. See, e.g., Kincaid v. United States, 682 F.2d 1220 (5th Cir. 1982); Estate of Trenchard v. Commissioner, T.C. Memo. 1995-121, T.C. Memo. 1995-232; Estate of Higgins v. Commissioner, T.C. Memo. 1991-47. We agree with respondent that pursuant to section 2512(b), the difference between those values is deemed a gift.

The final issue is whether the voting common stock that the decedent transferred to HBC should be valued as a single block of 50 percent of the stock of the corporation or as two blocks of 25 percent. As mentioned above, if the decedent's voting stock is valued as a single block, then the parties have stipulated that each share of stock was worth $11,827 immediately before the recapitalization. In that event, the difference between what the decedent transferred to HBC and what he received in return is $2,412, and the decedent's gifts to his sons will be valued

in the aggregate amount of $970,830. On the other hand, if the stock is valued as two 25-percent blocks, then the parties have stipulated that each share of stock was worth $9,671 immediately before the recapitalization. In that event, the difference between what the decedent transferred to HBC and what he received is $256 and the gifts will be valued in the aggregate amount of $103,040. In passing, we note respondent does not take the position that, for purposes of valuing decedent's stock, we must take into account the voting stock transferred to the corporation by Ms. Baker.

Generally, the gift tax applies to a transfer of property by way of gift. Secs. 25.2501-1(a)(1), 25.2511-1(a), Gift Tax Regs. As mentioned above, the value of the property at the date of the gift is considered the amount of the gift. Sec. 2512(a). Thus, for purposes of computing the gift tax, each separate gift must be valued separately. Rushton v. Commissioner, 498 F.2d 88, 93 (5th Cir. 1974), affg. 60 T.C. 272 (1973); Calder v. Commissioner, 85 T.C. 713, 720-721 (1985); Standish v. Commissioner, 8 T.C. 1204, 1209 (1947); Clause v. Commissioner, 5 T.C. 647, 649-650 (1945), affd. per curiam 154 F.2d 655 (3d Cir. 1946); Avery v. Commissioner, 3 T.C. 963, 970 (1944); Phipps v. Commissioner, 43 B.T.A. 1010

(1941), affd. 127 F.2d 214 (10th Cir. 1942); Adair v. Commissioner, T.C. Memo. 1987-494; Hipp v. Commissioner, T.C. Memo. 1983-746; Whittemore v. Fitzpatrick, 127 F. Supp. 710 (D. Conn. 1954). For example, we have rejected attempts by taxpayers to aggregate separate gifts of stock made on the same day in order to claim a blockage discount, and we have held that each separate gift must be valued separately. See, e.g., Rushton v. Commissioner, 60 T.C. 272 (1973); Phipps v. Commissioner, supra. Similarly, we have rejected an attempt by the Commissioner to aggregate separate gifts of stock made on the same day by a majority stockholder to members of his family in order to value the gifts as "control stock". See Estate of Heppenstall v. Commissioner, a Memorandum Opinion of this Court dated Jan. 31, 1949. We have applied the principle of valuing separate gifts separately not only in the case of the gifts made by a donor directly to several donees but also in the case of gifts made indirectly through a trust. See, e.g., Calder v. Commissioner, supra at 720-721; Avery v. Commissioner, supra; See generally Helvering v. Hutchings, 312 U.S. 393 (1941); Whittemore v. Fitzpatrick, supra.

As mentioned above, a transfer of property to a corporation for less than adequate and full consideration generally represents gifts by the donor to the individual

shareholders of the corporation to the extent of their proportionate interests in the corporation. <u>Kincaid v. United States</u>, <u>supra</u> at 1224, 1226; <u>Heringer v. Commissioner</u>, 235 F.2d 149 (9th Cir. 1956); <u>CTUW Georgia Ketteman Hollingsworth v. Commissioner</u>, 86 T.C. at 96-97. Sec. 25.2511-1(h)(1), Gift Tax Regs. Applying the principle that separate gifts must be valued separately, it follows that each such gift to a stockholder of a corporation must be valued separately. Cf. <u>Estate of Hitchon v. Commissioner</u>, 45 T.C. 96 (1965).

In these cases, the decedent through his participation in the recapitalization indirectly made gifts to his two sons. In valuing the gifts, respondent takes the position that the stock transferred by the decedent to the corporation should be treated as a single block of stock and should be valued accordingly. Thus, respondent has aggregated the decedent's stock for purposes of valuing the gifts he made to his sons. In our view, this approach violates the principle that separate gifts should be valued separately. We agree that the decedent surrendered stock in the recapitalization that represented 50 percent of the voting stock of the corporation. However, the decedent did not convey 50 percent of the voting stock of the corporation to either of the donees or to both of them

jointly.  See <u>Estate of Heppenstall v. Commissioner</u>, <u>supra</u>.
Respondent has committed error by valuing the decedent's
stock as if he had.  Cf. <u>Estate of Bright v. United States</u>,
658 F.2d 999, 1003 (5th Cir. 1981).

In light of the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.